

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00056-CR

---

JOSE NOE DURAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 0804749R, Honorable Charles P. Reynolds, Presiding

---

August 22, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS, and YARBROUGH, JJ.

Through a single issue, Jose Noe Duran appeals from the trial court's order denying his application for post-conviction DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure.[1]  For the following reasons, we affirm the order of the trial court.

---

[1] This appeal was originally filed in the Second Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas.  See TEX. GOV'T CODE ANN. § 73.001.

**Background**

In 2002, Appellant was convicted of sexual assault and sentenced to confinement in prison for eighty years.  The Second Court of Appeals affirmed his conviction, and the Texas Court of Criminal Appeals denied further review.[2]  Twenty years after his conviction, Appellant filed an application for post-conviction forensic DNA testing; it was denied by order of the trial court.

We glean the following from the trial court's adoption of the State's proposed findings of fact and conclusions of law:  The victim, A.W., shared an apartment with another, Williams.  Appellant lived in the same apartment complex.  A.W. never dated Appellant and was not interested in him romantically or sexually.

On June 11, 2000, A.W. and Appellant were in both her apartment and in Appellant's apartment, drinking beer all day.  That night, they were joined by Williams in her apartment.  Near midnight, A.W. "placed a pillow and blanket on the floor and passed out from drinking too much."  Williams and Appellant remained in the apartment.  Williams did not observe any sexual contact between A.W. and Appellant, or observe A.W. acting "in a sexual way" toward Appellant.  The following morning, Appellant was still in the apartment.

A.W. awoke to find her hands being held over her head and Appellant atop her with his penis inside her.  A.W. was not conscious when Appellant began sexual

_____

[2] *See Duran v. State,* No. 02-02-00247-CR, 2003 Tex. App. LEXIS 6813 (Tex. App.—Fort Worth Aug. 7, 2003, pet. ref'd) (mem. op., not designated for publication).

intercourse with her. Appellant did not ask for, nor did A.W. give, consent to have sexual intercourse.

The Tarrant County Medical Examiner's Office conducted pre-trial "STR-DNA"[3] testing on the vaginal swabs from A.W.'s sexual assault kit[4] and obtained the following results:

- The DNA profile obtained from the vaginal swab – epithelial cell fraction is female and matches A.W.'s known DNA profile.

- The DNA profile obtained from the vaginal swab – sperm cell fraction is a mixture from at least two contributors and includes male DNA. This mixture is consistent with originating from A.W. and Appellant, with the probability that 99.98% of unrelated random individuals are excluded as a possible contributor.

DNA Analyst Carolyn Van Winkle testified there were no unexplained or extra alleles in this DNA mixture, and, absent an identical twin, nothing in these results challenges Appellant's contribution status. The trial court found, "The inculpatory DNA testing results obtained from the vaginal swabs are highly probative evidence that [Appellant] sexually assaulted A.W."

**Analysis**

Appellant argues the trial court erred by failing to grant his Chapter 64 application for post-conviction DNA testing. We apply a bifurcated standard when reviewing a trial

---

[3] The Court of Criminal Appeals has recently discussed "STR," as standing for "short tandem repeats." Examining STRs can be "effective in identifying human components of DNA material as 'the [repeat] marker can be highly variable among individuals . . . .'" *Skinner v. State*, 665 S.W.3d 1, 12 n.11 (Tex. Crim. App. 2022) (citing John M. Butler, FORENSIC DNA TYPING: BIOLOGY, TECHNOLOGY, AND GENETICS OF STR MARKERS 85 (2d ed. 2005)).

[4] The trial court found the State still uses "the same STR nuclear-based DNA testing" as it did in 2002.

3

court's ruling on a Chapter 64 motion. *Coleman v. State,* No. 02-22-00089-CR, 2023 Tex. App. LEXIS 1530, at *4 (Tex. App.—Fort Worth Mar. 9, 2023, pet. ref'd) (mem. op., not designated for publication). That is, "we give almost total deference to the judge's resolution of historical fact issues supported by the record and applications-of-law-to-fact issues turning on witness credibility and demeanor," but "review de novo all other application-of-law-to-fact questions." *Id.* (citing *Reed v. State*, 541 S.W.3d 759, 768–69 (Tex. Crim. App. 2017)).

Due process does not guarantee a defendant a right to DNA testing. *Lumsden v. State,* No. 02-21-00012-CR, 2021 Tex. App. LEXIS 7872, at *33–34 (Tex. App.—Fort Worth Sept. 23, 2021, no pet.) (mem. op., not designated for publication) (citing *Ramirez v. State,* 621 S.W.3d 711, 717 (Tex. Crim. App. 2021)). Rather, when evidence potentially contains testable DNA material, a defendant is only entitled to post-conviction forensic DNA testing when, as relevant here, (1) the court finds identity was an issue in the case, *and* (2) the convicted person establishes by a preponderance of the evidence he would not have been convicted if DNA testing provided exculpatory results. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1-2).[5] We conclude Appellant did not satisfy Chapter 64's

---

[5] (a) A trial court may order post-conviction forensic DNA testing under this chapter only if:

    (1) ***(C) identity was or is an issue in the case; and

    (2) the convicted person establishes by a preponderance of the evidence that:

        (A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

        (B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

TEX. CODE CRIM. PROC. ANN. art. 64.03(a).

requirements. Therefore, the trial court properly denied Appellant's request for DNA testing.

First, we note that before a trial court may order post-conviction DNA testing under Chapter 64 the evidence must show identity was an issue in the case. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(C). Under Chapter 64, identity is not an issue if exculpatory results would not exclude the movant as the assailant. *Coleman,* 2023 Tex. App. LEXIS 1530, at *5. *Cf. Prible v. State,* 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) ("[I]f DNA testing would not determine the identity of the person who committed the offense or would not exculpate the accused, then the requirement of Article 64.03(a)(2)(A) has not been met."). Appellant's complaint is that the State failed to perform DNA testing on A.W.'s clothing, sleeping bag and blanket, items the trial court found to more likely involve "touch DNA rather than semen or some other biological fluid." Although further testing of these "non-intimate" items may identify additional individuals as contributing DNA, we fail to see how it would *exclude* Appellant as the assailant. The Court of Criminal Appeals has observed that "[t]ouch DNA poses special problems because epithelial cells are ubiquitous on handled materials, because there is an uncertain connection between the DNA profile identified from the epithelial cells and the person who deposited them, and because touch DNA analysis cannot determine when an epithelial cell was deposited." *Hall v. State,* 569 S.W.3d 646, 658 (Tex. Crim. App. 2019) (cleaned up). Even if another's DNA could be discovered on these items, that would not exclude Appellant as the assailant given the presence of Appellant's DNA (and the absence of other alleles) in the DNA mixture recovered from A.W.'s vaginal swab. Appellant therefore failed to satisfy the requirement of article 64.03(a)(1)(C).

Second, entitlement to Chapter 64 DNA testing requires Appellant to "show by a preponderance of the evidence—a greater than 50% likelihood—that he would not have been convicted if the proposed testing's exculpatory results were available at the time of his trial." *Reed*, 541 S.W.3d at 774. When making this assessment, we assume that the results of the DNA testing would be favorable to him. *Routier v. State,* 273 S.W.3d 241, 257 (Tex. Crim. App. 2008). "The burden under Article 64.03(a)(2)(A) is met if the record shows that exculpatory DNA test results, excluding the defendant as the donor of the material, would establish, by a preponderance of the evidence, that the defendant would not have been convicted." *Ex parte Gutierrez*, 337 S.W.3d 883, 899 (Tex. Crim. App. 2011). As shown above, neither the absence of Appellant's DNA nor the presence of another's DNA on the items for which testing was sought would exonerate Appellant as assailant. Further, because the same testing techniques were used in 2002 as today, we agree with the trial court that "[Appellant] makes no credible showing why new testing would provide a more accurate or probative result than those results previously obtained." DNA testing must do more than simply "muddy the waters," which is all Appellant could do with the relief he seeks. *See Ex parte Gutierrez,* 337 S.W.3d at 892. We conclude Appellant has not established, by a preponderance of the evidence, that he would not have been convicted if exculpatory results had been obtained through DNA testing.

## Conclusion

We overrule Appellant's sole issue on appeal and affirm the order of the trial court.

Lawrence M. Doss
Justice

Do not publish.